UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MACROMEX Srl,

                Petitioner,

     - against -

GLOBEX INTERNATIONAL INC.,

                Respondent.

------------------------------------------------------------X

08 Civ. 0114 (SAS)

# MACROMEX SrL'S MEMORANDUM OF LAW IN OPPOSITION TO GLOBEX INTERNATIONAL INC.'S CROSS-PETITION TO VACATE

NICOLETTI HORNIG & SWEENEY
*Attorneys for Macromex Srl*
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
(212) 220-3830
(Our File No.: 00000717 JFS)

Of Counsel:

    James F. Sweeney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

PROCEDURAL HISTORY ......................................................................................................... 1

LEGAL STANDARD .................................................................................................................. 3

   POINT I
      THE DAMAGES AWARD WAS ENTIRELY JUSTIFIED
      AND CORRECT AND SHOULD NOT BE DISTURBED ................................................ 5

   POINT II
      THE LIABILITY RULING WAS ENTIRELY JUSTIFIED
      AND CORRECT AND SHOULD NOT BE DISTURBED ................................................ 9

   POINT III
      MACROMEX SHOULD BE AWARDED COSTS AND
      ITS COUNSEL FEES IN OPPOSING THIS MOTION ..................................................... 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Andros Compania Maritima S.A. v. Marc Rich & Co. A.G.*,
  579 F.2d 691 (2d Cir. 1978)..................................................................................11

*Banco de Seguros del Estado v. Mutual Marine Office*,
  230 F.Supp.2d 362 (S.D.N.Y. 2002) (Scheindlin, J.),
  aff'd., 344 F.3d 255 (2d Cir. 2003)..................................................................4, 8, 12

*Bear Stearns & Co. Inc. v. 1109580 Ontario Inc.*,
  409 F.3d 87 (2d Cir. 2005)....................................................................................4

*Brotman v. Sant Cassia Investment Management*,
  No. 96 Civ. 6727, 1997 WL 401671 (S.D.N.Y. July 16, 1997).............................7

*C.T. Shipping Ltd. v. DMI (U.S.A.) Ltd.*,
  774 F.Supp. 146 (S.D.N.Y. 1991).........................................................................12

*D.H. Blair & Co. Inc. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006).....................................................................................9

*Duferco International v. T. Klaveness Shipping*,
  333 F.3d 383 (2d Cir. 2003)............................................................................3, 4, 8

*Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co. Inc.*,
  1991 WL 123962 (S.D.N.Y. 1991).......................................................................12

*Johnson v. Lajat International Investments Inc.*,
  No. 04 Civ. 5897 2004 WL 2781725 (S.D.N.Y. Dec. 1, 2004) (Scheindlin, J.).........5

*McDaniel v. Bear Stearns & Co. Inc.*,
  196 F.Supp.2d 343 (S.D.N.Y. 2002) (Scheindlin, J.)..............................................3

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Bobker*,
  808 F.2d 930 (2d Cir. 1986)...................................................................................8

*Pompano-Windy City Partners v. Bear Stearns & Co.*,
  794 F.Supp. 1265 (S.D.N.Y. 1992).........................................................................7

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC*,
  497 F.3d 133 (2d Cir. 2007)....................................................................................6

*Ripa v. Cathy Parker Management Inc.*,
  No. 98 Civ. 0577, 1998 WL 241621 (S.D.N.Y. May 13, 1998)(Scheindlin, J.) ........................ 3

*Saint Mary Home, Inc. v. Service Employees Intern. Union*,
  116 F.3d 41 (2d Cir. 1997) .............................................................................................. 11

*Sobol v. Kidder, Peabody & Co. Inc.*,
  49 F.Supp.2d 208 (S.D.N.Y. 1999)(Scheindlin, J.) ................................................................ 4, 9

*Techcapital Corporation v. Amoco Corporation*,
  No. 99 Civ. 5093, 2001 WL 267010 (S.D.N.Y. Mar. 19, 2001) ............................................ 5

*United Paperworkers Int'l Union v. Misco Inc.*,
  484 U.S. 29, 98 L.Ed.2d 286 (1987) .................................................................................. 7

*Vaughn v. Leeds, Morelli & Brown P.C.*,
  No. 04 Civ. 8391, 2007 WL 4157275 (S.D.N.Y. Nov. 19, 2007) ........................................ 5, 6

*Wallace v. Buttar*,
  378 F.3d 182 (2d Cir. 2004) ............................................................................................ 5

*Westerbeke Corporation v. Daihatsu Motor Co. Ltd.*,
  304 F.3d 200 (2d Cir. 2002) ............................................................................................ 10-11

**Statutes**

28 U.S.C. § 1927 ........................................................................................................... 12

## INTRODUCTION

Given Globex's steadfast refusal to satisfy the Final Award, Macromex has been forced to petition this Court for confirmation. In response, Globex has filed the instant cross-petition to vacate the Final Award.

Because Globex's misplaced arguments do not even come close to meeting the extremely high burdens of proof necessary to vacate an arbitration award, Globex's cross-petition should be denied and this Court should confirm the Final Award and enter judgment thereupon.

## PROCEDURAL HISTORY

In June of 2006, a dispute arose between the parties stemming from purchase contracts for frozen chicken. Macromex claimed a breach by reason of Globex's non-delivery of some chicken due under the contracts, while Globex claimed that its contractual performance was excused by *force majeure*. Macromex sought the sum of $608,323.00 plus interest, costs and fees as damages.

Pursuant to the contracts' arbitration agreement, the parties submitted their dispute to arbitration in New York before the AAA's International Center for Dispute Resolution. Philip D. O'Neill, Jr., Esq. was appointed as Sole Arbitrator. Mr. O'Neill, a partner in the law firm of Edwards Angell Palmer & Dodge is a well-known and very experienced international arbitrator. (A copy of Philip O'Neill's webpage profile taken from the Edwards Angell website is annexed hereto as Exhibit A.)

On June 4, 5 and 6, 2007, full-day hearings were held before the arbitrator wherein the testimony of witnesses was heard and documents were received into evidence. Following said hearings, Briefs and Reply Briefs were submitted and exchanged by each party. (See Exhs. 3, 4, 5 and 6 attached to Sterken Declaration.)

Having considered the parties' evidence and Briefs and Reply Briefs, the arbitrator made and entered a written Interim Award dated August 7, 2007, which upheld Macromex's claim in full and awarded damages to Macromex in the sum of $608,323.00 plus interest and costs (including reasonable attorneys' fees) deferring decision on the ancillary issues of the applicable rate of interest and the allocation and *quantum* of costs. (See Exh. 7 attached to the Sterken Declaration.)

Thereafter, on August 20, 2007, Globex submitted a "Request For Interpretation", asking the arbitrator to reconsider and vacate the Interim Award. In its "Request", Globex argued that the Interim Award had applied the wrong law and had miscalculated the damages. The parties exchanged briefs on the issues and the arbitrator then heard oral argument on Globex's Request on October 9, 2007. (See Exhs. 9 through 12 attached to the Sterken Declaration.)

By his "Post-Hearing Order No. 1", dated October 23, 2007, the arbitrator granted Globex's Request in part, but only as to correction of minor clerical errors. A corrected Interim Award was issued, dated October 23, 2007, which embodied no substantive changes to the Interim Award. The arbitrator ruled that he had no authority to reconsider the legal and damages issues raised by Globex in its Request. Notably, he added:

> "… even if there was inherent authority to reconsider some or all of the issues raised on the merits, [Globex] has presented no compelling authority that leads to a different result, including on the issue of damages, where the evidentiary context does not seem to justify the interpretation [Globex] would now place on it."

(See Exhs. 13 and 14 to Sterken Declaration.)

Having considered the parties' evidentiary submissions on fees, interest and costs, the arbitrator then made and entered a Final Award in New York, New York dated December 12, 2007 which expressly incorporated the corrected Interim Award dated October 23, 2007. The

Final Award upheld Macromex's claim in full (save for a small miscalculation of attorneys' fees), and awarded damages to Macromex in the total sum of $876,310.58, including interest, costs and attorneys' fees. (See Exh. 15 to Sterken Declaration.)

There being a minor computational error in the Final Award as to the *quantum* of attorneys' fees, Macromex requested that the Final Award be corrected to rectify this minor mathematical error. On December 27, 2007, by his "Disposition of Application For Modification/Clarification of Award of arbitrator", the arbitrator granted Macromex's request and duly amended the total amount of the Final Award to $885,982.92. (*Id.*)

Globex has failed to satisfy any part of the Final Award.

## LEGAL STANDARD

Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation. *McDaniel v. Bear Stearns & Co. Inc.*, 196 F.Supp.2d 343, 350 (S.D.N.Y. 2002) (Scheindlin, J.). Indeed, to interfere with the arbitral process would frustrate the intent of the parties, and thwart the usefulness of arbitration, making it "the commencement, not the end, of litigation." *Duferco International v. T. Klaveness Shipping*, 333 F.3d 383, 389 (2d Cir. 2003) (citing *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 349 15 L.Ed. 96 (1854)).

Judicial review of arbitration awards is narrowly limited, for "[u]ndue judicial intervention would inevitably judicialize the arbitration process, thus defeating the objective of providing an alternative to judicial dispute resolution." *Ripa v. Cathy Parker Management Inc.*, No. 98 Civ. 0577, 1998 WL 241621, at *2 (S.D.N.Y. May 13, 1998)(Scheindlin, J.) (quoting *Tempo Shain Corp. v. Bertek Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)).

An arbitration decision must be confirmed if there is any basis for upholding the decision and "[i]f there is even a barely colorable justification for the outcome reached." *Bear Stearns & Co. Inc. v. 1109580 Ontario Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (citing *Willemijn Houdstermaatschappij BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12-13 (2d Cir. 1997)).

Review under the doctrine of manifest disregard is "severely limited." It is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare. *Duferco*, 333 F.3d at 389. "Our reluctance over the years to find manifest disregard is a reflection of the fact that it is a doctrine of last resort – its use is limited to only those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent. . .." *Id.*

The "manifest disregard" test is rigorous. It requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Sobol v. Kidder, Peabody & Co. Inc.*, 49 F.Supp.2d 208, 216-217 (S.D.N.Y. 1999)(Scheindlin, J.) (quoting *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892 (2d Cir. 1985)).

The Second Circuit has cautioned that "manifest disregard clearly means more than error or misunderstanding with respect to the law. *Banco de Seguros del Estado v. Mutual Marine Office*, 230 F.Supp.2d 362, 371 (S.D.N.Y. 2002) (Scheindlin, J.), aff'd., 344 F.3d 255 (2d Cir. 2003) (citing *Halligan v. Piper Jaffray Inc.*, 148 F.3d 197, 202 (2d Cir. 1998)). Even if the party moving to vacate proves that the arbitrator's decision is ". . .based on a manifest error of law, a court must confirm the award if grounds for the decision can be inferred from the facts of the case." *Banco*, 230 F.Supp.2d at 371 (citations omitted).

> "A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law. On the contrary, the award 'should be enforced, despite a court's disagreement with it on the merits, if there is a *barely*

4

*colorable justification* for the outcome reached.'" In deciding whether to confirm an arbitration award, the court "should not conduct an independent review of the factual record" to check if facts support the panel's conclusion. Rather, "[t]o the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so only for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law."

*Johnson v. Lajat International Investments Inc.*, No. 04 Civ. 5897 2004 WL 2781725, at *3 (S.D.N.Y. Dec. 1, 2004) (Scheindlin, J.) (emphasis in original) (quoting *Banco de Seguros del Estado v. Mutual Marine Office Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)).

There is a strong presumption in favor of enforcing arbitrators' awards. *Techcapital Corporation v. Amoco Corporation*, No. 99 Civ. 5093, 2001 WL 267010, at *5 (S.D.N.Y. Mar. 19, 2001) (citing *Ashraf v. Republic New York Securities*, 14 F.Supp.2d 461, 464 (S.D.N.Y. 1998)).

## POINT I

### THE DAMAGES AWARD WAS ENTIRELY JUSTIFIED AND CORRECT AND SHOULD NOT BE DISTURBED

Globex challenges the damages award on the ground that it is "irrational."[1] "But an award is not subject to attack on the ground that the arbitrator's decision is irrational." *Vaughn v. Leeds, Morelli & Brown P.C.*, No. 04 Civ. 8391, 2007 WL 4157275, at *4 (S.D.N.Y. Nov. 19, 2007). The Second Circuit has made pellucidly clear that it recognizes only five bases for vacatur of an arbitration award: the four enumerated in the Federal Arbitration Act, and "manifest disregard of the law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004), which the court has developed through its case law. Very recently, the Court rejected an invitation to expand those grounds.

> Other Circuits have recognized additional, nonstatutory bases upon which a reviewing court may vacate an arbitrator's award, including where the awards are "completely irrational," "arbitrary and capricious," and contrary to an explicit public policy. To the extent our sister courts may have broadened somewhat the path to vacatur of an arbitration award, we decline to wander from the narrow one embodied in our own jurisprudence.

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC,* 497 F.3d 133, 139 (2d Cir. 2007); *see also Vaughn,* 2007 WL 4157275, at *4. Accordingly, Globex's challenge for "irrationality" is entirely baseless and must fail.

Notwithstanding Globex's argument, the damages award has both a logical rationale and a rational logic: The contract was CIF Constanza. Having rejected Macromex's offer to cure, Globex became liable for breach of the CIF Constanza contract. Damages for such a breach, of course, are measured by the market in Constanza and not by the market at a place where Globex might have shipped the chicken, but chose not to do so. The arbitrator thus properly awarded damages measured by the market in Constanza. Accordingly, the damages award was entirely rational, logical and justified. Globex's arguments to the contrary must be rejected.

Moreover, the arbitrator expressly ruled:

> Article 74 of the CISG provides the applicable standard for the damages claim asserted by Buyer. Basically, under it Buyer is entitled to lost profits caused by Seller that were foreseeable at the time of entry into the Contracts. *The damages requested by Buyer meet the Article 74 standard and are adequately evidenced.* (Interim Award, Sterken Exh. 13 p. 11) (Emphasis added).

This demonstrates that the arbitrator in fact acknowledged the legal standard for an award of damages under the CISG and that, in his judgment, those damages were foreseeable and properly evidenced. Even if this Court disagrees with the arbitrator's legal analysis, the Court must not now substitute its judgment for that of the arbitrator.

---

[1] See Globex Memorandum at p. 4: "The Illogical and Irrational Damages Award."

Even if *arguendo* the arbitrator committed serious legal error (which Macromex denies) or misapplied the law (which Macromex denies), that is not enough to vacate the Final Award. *Brotman v. Sant Cassia Investment Management*, No. 96 Civ. 6727, 1997 WL 401671, at *3 (S.D.N.Y. July 16, 1997) (citing *Siegel v. Titan Industrial Corp.*, 779 F.2d 891, 892 (2d Cir. 1985)); *Pompano-Windy City Partners v. Bear Stearns & Co.*, 794 F.Supp. 1265, 1272 (S.D.N.Y. 1992); *United Paperworkers Int'l Union v. Misco Inc.*, 484 U.S. 29, 38, 98 L.Ed.2d 286 (1987).

Having breached the contract and having refused to perform, Globex misappropriated a profit that rightfully belonged to Macromex.[2] Globex should not now be rewarded for that wrongful breach.

Moreover, Globex steadfastly maintained throughout these proceedings that both Turkey and Georgia were unacceptable alternative markets. Globex now argues that the same Turkish and Georgian marketplaces that it forbade to Macromex should now be used as the yardstick for measuring Macromex's damages. Globex's position, we submit, is irrational and illogical. As such, the arbitrator was entirely justified in making Macromex whole by awarding Macromex "the benefit of its bargain," *i.e.*, the $608,323.00 profit that Globex misappropriated.

Most importantly, Globex has failed to carry its heavy legal burden upon this motion. Globex points to no case, no statute and no law that the arbitrator "disregarded." Globex is reduced to arguing that the arbitrator failed to adopt its (self-serving) interpretation of the law.

Globex has not proven any of the elements required for vacating an arbitration award for alleged "manifest disregard of the law":

---

[2] The arbitrator explicitly found that Globex "...[preferred] to pocket the profit available in a market experiencing a dramatic rise in prices. In doing so, [Globex] misappropriated a profit...the law does not countenance such a result." Interim Award, Sterken Exh. 13, at p. 11.

7

- Vacatur for "manifest disregard of the law" requires proof that the arbitrator was "…fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Duferco*, 333 F.3d at 389. Globex has not proven any rule of law that foreseeable damages in a substitute performance scenario are only to be measured by prices in the substituted marketplace.

- Vacatur for "manifest disregard of the law" also requires proof that the law supposedly ignored by the arbitrator was "…well defined, explicit and clearly applicable to the case." *Banco*, 230 F.Supp.2d at 371 (S.D.N.Y. 2002). Again, Globex has cited not one precedent, be it case law, arbitration award, statute or otherwise, (and none was ever cited to the arbitrator) that defines and/or makes explicit Globex's proposition that foreseeable damages in a substitute performance scenario are to be measured only by prices in the substituted market.

- Vacatur for "manifest disregard of the law" also requires that Globex prove an element of *scienter*, *i.e.* that the arbitrator intentionally disregarded the law with knowledge aforethought. *Duferco*, 333 F.3d at 390. Globex has not alleged, no less proven, that Mr. O'Neill, the arbitrator, intentionally disregarded the law with knowledge aforethought.

To suit its own argument, Globex cites only to the standard set forth in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986): "[Any] error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." But the Second Circuit has expressly discarded that standard:

> The party challenging an award for manifest disregard of the law must demonstrate that the arbitrator actually knew about the relevant rule of law. A showing that the average person qualified to be an arbitrator would know the particular rule is insufficient to that end. *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997). ("[T]he term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but

8

decides to ignore or pay no attention to it.") *DiRussa* rejected the argument that manifest disregard could be satisfied by showing that "the controlling legal principle and subsequent error is so obvious to the average qualified arbitrator that any different conclusion is absurd."

*D.H. Blair & Co. Inc. v. Gottdiener*, 462 F.3d 95, 111 (2d Cir. 2006). As aforesaid, Globex has not shown that the arbitrator actually knew about the rule of law that Globex now propounds. Accordingly, Globex's damages argument fails.

### POINT II

### THE LIABILITY RULING WAS ENTIRELY JUSTIFIED AND CORRECT AND SHOULD NOT BE DISTURBED

At page 6 of its Memorandum, under the heading "the Misapplication of UCC §2-614," Globex argues that the Final Award should be vacated. However, any such alleged misapplication of the law (which Macromex denies) is insufficient to support a motion to vacate for manifest disregard of the law:

> The "manifest disregard" test is rigorous. It requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.

*Sobol*, 49 F.Supp.2d at 216-217 (quoting *Siegel*, 779 F.2d at 892. Thus, Globex's arguments that the arbitrator misapplied the UCC (which Macromex denies) are unavailing.

Incredibly, Globex also now accuses the arbitrator of having "manifestly disregarded" the UCC. This is astounding because Globex itself urged the arbitrator to disregard the UCC and instead apply CISG Article 79(1). Quoting Globex:

> Article 79(1) expressly settles the parties' rights vis-à-vis the import ban...CISG Article 79(1) expressly settles the effect of the ban, thereby *precluding* resort to any other analogous law on *force majeure*...CISG Article 79(1) is dispositive...[the *force majeure* provisions of UCC § 2-615 are] *inapplicable* in light of CISG 79(1)...

9

See Sterken Exh. 5 at page 1 and Sterken Exh. 3 at p. 12. fn. 2 and at p. 14. (Emphasis added). It is sheer hypocrisy for Globex to now argue that the arbitrator disregarded the very law that Globex urged him to disregard. On this basis alone, Globex's argument must fail.

Once he reviewed and considered all of the arguments later raised by Globex in its unauthorized "Request for Interpretation," the arbitrator rejected Globex's Request as unauthorized and ruled as follows:

> Alternatively, even if there was inherent authority to reconsider some or all of the issues raised on the merits, [Globex] has presented no compelling authority that leads to a different result. (Sterken Exh. 14 at p. 2.)

Globex accuses the arbitrator of disregarding the official Commentary to the UCC. But, as Globex candidly admits, that Official Commentary is not the law and thus the arbitrator is free to ignore it if he so chooses. (See Sterken Exh. 8 p. 7, fn. 3.) Manifest disregard of the Official Commentary is not grounds for vacating the Final Award.

The balance of Globex's argument merely advocates its own self-serving interpretations of the CISG and the UCC. It does not even begin to meet Globex's heavy burden upon this motion:

> A party seeking vacatur must therefore demonstrate that the arbitrator knew of the relevant principle, appreciated that this principle controlled the outcome of this disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.

*Westerbeke Corporation v. Daihatsu Motor Co. Ltd.*, 304 F.3d 200, 217 (2d Cir. 2002). Globex has failed to articulate the governing legal principle, has failed to prove that the supposedly-ignored law was "defined," "explicit" and "clearly applicable," has failed to prove that the arbitrator actually knew of this legal principle, has failed to prove that the arbitrator "willfully

10

flouted" the governing law.[3]  In short, Globex has done little, if anything, to overcome the "strong presumption that the arbitrator has not acted in manifest disregard of the law." *Id.* at 218.

Here, a review of the Interim Award (incorporated into the Final Award) shows that the arbitrator engaged in a painstaking in-depth analysis of both the CISG and the UCC. He didn't "ignore" or "disregard" those laws. On the contrary, he delved deeply into that law, explaining and detailing his rationale each step of the way. See Sterken Exh. 13. "When an arbitrator explains [his] conclusions...in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result. *Saint Mary Home, Inc. v. Service Employees Intern. Union*, 116 F.3d 41, 44 (2d Cir. 1997); *Andros Compania Maritima S.A. v. Marc Rich & Co. A.G.*, 579 F.2d 691, 704 (2d Cir. 1978).

## POINT III

## MACROMEX SHOULD BE AWARDED COSTS AND ITS COUNSEL FEES IN OPPOSING THIS MOTION

The Second Circuit has spoken loudly, clearly and often: motions to vacate for supposed "manifest disregard of the law" are disfavored. They carry an "exceedingly" high burden of proof. Indeed, the Second Circuit has done everything to dissuade the filing of such motions and they are rarely granted.

Viewed against this cautionary backdrop, Globex's cross-petition borders on the frivolous; it is utterly groundless, it is devoid of merit and should never have been filed. If anyone is in "manifest disregard of the law," it is Globex. Globex should therefore be sanctioned

---

[3] In addition, and even if a party proves that an arbitrator's decision is based on a manifest error of law, a court must nevertheless confirm the award if grounds for the decision can be inferred

(in the form of an award of Macromex's costs and attorneys' fees) for the waste and expense incurred in connection with its ill-advised cross-petition. *C.T. Shipping Ltd. v. DMI (U.S.A.) Ltd.*, 774 F.Supp. 146, 155 (S.D.N.Y. 1991); *Jamaica Commodity Trading Co. v. Connell Rice & Sugar Co. Inc.*, 1991 WL 123962, at *4 (S.D.N.Y. 1991); 28 U.S.C. § 1927.

### CONCLUSION

The Final Award should be confirmed and Globex's Cross-Petition to Vacate should be denied with costs and attorneys' fees awarded to Macromex.

Dated: New York, New York
       February 21, 2008

                         NICOLETTI HORNIG & SWEENEY
                         Attorneys for Macromex Srl

                By: _____
                    James F. Sweeney (JFS-7745)
                    Wall Street Plaza
                    88 Pine Street, 7th Floor
                    New York, New York 10005-1801
                    (212) 220-3830
                    (Our File No.: 00000717 JFS)

TO:

Stanley McDermott, Esq.
Sarah Sterken, Esq.
DLA Piper US LLP
1251 Avenue of the Americas
New York, New York 10020

X:\Public Word Files\0\717\Legal\MOL IN OPP. TO CROSS-PETITION TO VACATE.2.15.08.SA.doc

---

from the facts of the case. *Banco*, 230 F.Supp.2d at 371.

EXHIBIT A

# EDWARDS ANGELL PALMER & DODGE LLP

**AREAS OF PRACTICE**
- Litigation
  - IP Litigation
- Cross Border
- Business Law
- Intellectual Property
  - IP Litigation

**EDUCATION**
- Boston College Law School, J.D.
- Hamilton College, B.A.

**BAR ADMISSIONS**
- Rhode Island
- Massachusetts
- New York

**MEMBERSHIPS**
- Boston Bar Association
- American Bar Association
- Fellows of the American Bar Foundation
- International Law Association
- American Society of International Law

## PROFESSIONALS

**Philip D. O'Neill, Jr.**
Partner



poneill@eapdlaw.com

Boston
Tel 617.951.2253
Fax 888-325-9125

Phil's international practice ranges from general corporate work to dispute resolution. He has acted as outside general counsel to a number of American and foreign clients in connection with projects in the U.S. and around the world, including joint ventures and private equity investments. Phil's international general counsel practice has involved matters/issues in as many as 45-50 countries per year. He has also represented both U.S. and foreign companies in cross-border and domestic arbitration as well as litigation matters in the U.S. and abroad for nearly 30 years. His experience as advocate or arbitrator includes international commercial disputes involving energy supply, joint ventures, health care, telecom, valuation and transfer pricing, as well as patent royalty and other intellectual property, technology transfer and licensing matters. He is a very experienced international arbitrator and is on panels or listed by arbitral institutions globally, including the American Arbitration Association, International Chamber of Commerce, WIPO, the London Court of International Arbitration, and the Stockholm, Milan, Dubai, and Hong Kong Arbitration Centers. Phil is a fellow in England's Chartered Institute of Arbitrators, and has been on the American Panel of Arbitrators to resolve trade disputes under the North American Free Trade Agreement. Phil has been listed repeatedly in the International Arbitration section of *The Best Lawyers in America*.

**Notable Experience**
**Guidance/Transactional:**
- Phil provided post 9/11 guidance to the Chairman of a large Arab bank on anti-terrorist finance issues.

- He served as International General Counsel to a Middle Eastern-financed offshore collective investment in special purpose corporations for U.S., European, North African and Middle Eastern investments.

- He served as International General Counsel for the Middle Eastern-financed structuring of offshore funds for an investment advisory company.

- He served as International General Counsel to a Middle Eastern-financed Bahraini fund for GCC/Yemen investments.

- He served as International General Counsel to a Middle Eastern commercial family on 9-10 figure investment advisory matters and foreign investments in Europe and Asia.

- He has served as International General or Special Counsel to commercial families from the Middle East and North Africa, including Saudi, Kuwaiti, U.A.E., Qatar, Egypt, Lebanon and Morocco, on several matters including U.S. and European investments.

- He has acted as International General or Special Counsel to Middle Eastern clients for global investment banking related activities.

- He acted as International General Counsel to a Middle Eastern-financed offshore special purpose corporation, investing in Cayman Island funds for Middle Eastern investments.

- He acts as International General Counsel on joint ventures and related industrial projects for Middle Eastern strategic financial partners and American technology partners.

- He has acted as international general counsel to a Middle-Eastern client in connection with European real estate ownership/development matters.

**Dispute Resolution**

- Phil authored a panel decision relating to a ten-figure patent/licensing royalty claim between an Asian pharmaceutical and an American biotech company.

- He was an advocate in a ten-figure energy long-term supply contract breach claim between American and African companies.

- He served as a panel chair in a nine-figure patent royalty claim between an American company and an Asian company in the telecom industry.

- Phil was a member of the panel for a nine-figure patent license dispute between American and Canadian companies over European and Latin American technology transfer.

- Phil has been a member of arbitration panels in military defense industry-related disputes ranging from foreign military sales-related contract claims to chairing a Tribunal on a nine-figure patent royalty claim based on Russian technology.

- He authored a panel decision regarding a nine-figure post-closing adjustment valuation claim arising from the sale of international shipping assets.

- He served as an advocate to the American party in a nine-figure U.S. litigation in aid of London arbitration on a Middle Eastern Joint Venture.

- Phil was the panel chair for an eight-figure Eastern European Power Plant Joint Venture claim.

- He chaired or was a member of the panel on eight-figure software trade secret disputes in various industries, including telecom.

- He was the panel chair for an eight-figure Latin American post-closing adjustment claim.

- Phil served as an advocate for a Middle Eastern/off-shore party in an eight-figure Middle Eastern telecom privatization joint venture.

- Phil was an advocate for Liechtenstein and Middle Eastern parties in an eight-figure London arbitration claim and in a related Saudi grievance board proceeding in a health care joint venture dispute.

- Phil served as Lead Counsel for a Common Defense Group of American, European, and Asian parties in a design patent infringement action before the U.S. International Trade Commission.

- Phil served as an arbitrator in a Chinese outsourcing dispute in Hong Kong.

**Recent Speaking Engagements and Publications**

Phil frequently lectures and writes on private international law, arbitration and other business topics both in the United States and abroad.

* More Publications...

**Besides Edwards Angell Palmer & Dodge**
Phil served as Nomura lecturer in law at Harvard Law School on International Arbitration in 2005. His professorial career began at Boston College Law School in 1988, where he has taught seminars on "National Security Law" and on "International Arbitration". He also teaches at Boston University School of Law, where he currently conducts a seminar on "National Security Law," and previously taught a L.L.M. level course entitled "American Foreign Policy and International Banking". Phil previously guest-lectured at the Harvard Law School on "International Arbitration" in the mid to late 1990s as well as 2006, and before that at Harvard Business School on venture capital.

Phil has long been active in Democratic politics, most recently serving as National Co-Director of Lawyers for Kerry-Edwards. He has for many years advised Senators and Presidential aspirants alike on foreign and defense policy issues. Most recently he served in the 2004-election campaign as a Senior Policy Advisor and Chairman of the Kerry campaign's Foreign Policy Task Force on Bilateral Relations with Arab and Islamic Nations. He also provided foreign policy guidance to Democratic Congressional candidates under the auspices of the Alliance for American Leadership. Previously he was an Adjunct Research Fellow on national security issues and associated with the John F. Kennedy School of Government's Center for Science and International Affairs from 1982 to 1988. He is a past Vice Chair of the American Bar Association's Committee on National Security Law. His prior service to the Boston Bar Association included chairing the International Section as well as its International Arbitration Committee. He is a fellow in the American Bar Foundation. He has been named repeatedly by *Boston Magazine* as a Massachusetts "Super Lawyer" in its International category.

The hiring of a lawyer is an important decision that should not be based solely on advertisements. Prior results do not guarantee a similar outcome.